FILED
2018 Oct-09 PM 04:03
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **BREAKING FREE, LLC, and**<br>**CONNIE BUTTRAM,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No.:** |
| | ) | |
| **JCG FOODS OF ALABAMA,**<br>**LLC, KOCH MEAT CO., INC.,**<br>**and KOCH FOODS, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

COME NOW the Plaintiffs, Connie Buttram and Breaking Free, LLC, and for their Complaint against the Defendants JCG FOODS OF ALABAMA, LLC, KOCH FOODS, INC., and KOCH MEAT CO., INC.

## SUMMARY

Plaintiffs claim damages against the defendants for violation of the Agricultural Fair Practices Act (hereinafter AFPA), violation of the Packers and Stockyards Act (hereinafter PSA), fraud, breach of contract, breach of the covenant of good faith and fair dealing and negligent, and willful and reckless misrepresentation. Plaintiffs seek compensatory damages, punitive damages and

attorney's fees and costs.

## PARTIES

1.    Plaintiff Connie Buttram (hereinafter "Buttram") is an individual who is a citizen of the United States and resident at 5662 County Road 3, Albertville, DeKalb County, Alabama and the owner of Breaking Free, LLC.

2.    Plaintiff Breaking Free, LLC, (hereinafter "Breaking Free") is an Alabama Limited Liability Company with its principal place of business in DeKalb County, Alabama.

3.    Defendant JCG Foods of Alabama, LLC (hereinafter "JCG") is an Alabama Limited Liability Company whose principal place of business is located in Park Ridge, Illinois 60068, and participated in the acts and plans complained of herein.

4.    Defendant Koch Foods, Inc. is registered as a Delaware corporation headquartered in Park Ridge, Illinois and participated in the acts and plans complained of herein.   Koch Foods, Inc. is the fourth largest Integrator in the country, operating eight Complexes located throughout the United States and processing 12 million Broilers weekly, and accounting for 7.4% of the market.

5.    Defendant Koch Meat Co., Inc., d/b/a Koch Poultry Co., is registered as an Illinois corporation headquartered in Park Ridge, Illinois, and is a wholly-owned subsidiary of Koch Foods, Inc. and participated in the acts and plans

2

complained of herein.   Defendants Koch Foods, Inc. and Koch Meat, Co., Inc. are collectively referred to herein as "Koch."

## JURISDICTION

6.     The Plaintiffs' federal claims arise under the Agricultural Fair Practices Act, 7 U.S.C. § 2301, et seq., and under the Packers and Stockyards Act, 7 U.S.C. § 181, et seq.  Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §1331 and 7 U.S.C. §§ 209 and 2301.  This Court also has pendent jurisdiction over the state law claims.

7.     The Plaintiffs' claims arose in this judicial district and division.  Venue is therefore proper in this Court.

## FACTUAL BACKGROUND

### JCG's and Koch's Relationship with Poultry Growers

8.     This is a case whereby JCG and Koch, and their named employees, acted illegally and unconscionably in a manner that prevented the Plaintiffs, who are contract poultry growers for JCG and Koch, from growing chickens in a fair and profitable manner, subjecting them to agricultural servitude, akin to the abuses subjected to sharecroppers of the 1860's.

9.     JCG and Koch operate as what is known as an "integrator." They control each and every aspect of raising chickens, slaughtering them, and selling their meat. JCG's and Koch's various chicken meat products come from broilers—

chickens genetically altered to produce so much breast meat that their bones cannot properly support their body—that are born in JCG hatcheries, from eggs laid by JCG and Koch's hens, and remain JCG and Koch's property throughout their entire lives. The broilers are grown on feed formulated and provided by JCG and Koch, in conditions regulated by JCG and Koch, and treated by veterinarians hired by JCG and Koch according to JCG's and Koch's standards and rules. They are slaughtered on the date JCG and Koch select, in JCG and Koch plants, and where JCG and Koch employees evaluate the birds to determine whether they are fit for human consumption. If so, they are sold based on JCG's and Koch pre-existing contracts. If not, JCG and Koch still sells the chicken to usually produce feed for other animals such as dogs and cats.

10.     In this system, so-called farmers/independent contractors like the Plaintiffs, Connie Buttram and Breaking Free, are known as "growers." They bear all the risk. They are responsible for building and maintaining the farms on which the broilers are cared for, relying on JCG's and Koch's representations regarding its commitment to its contractors and their future earnings to take out massive loans, typically guaranteed by the United States taxpayer, for which they are personally responsible. In return, Plaintiffs are paid based on a "tournament system," in which all growers whose chickens are slaughtered within a given week compete with one another. The top producing growers—as solely determined by JCG and Koch—are

paid a premium and the lower ranked growers are subjected to offsetting discounts or deductions. This ensures that JCG's and Koch's costs are consistent, but the growers can neither predict nor control their pay.

11.    As with all the local growers, Breaking Free, through Plaintiff Buttram, entered into an unconscionable adhesion growout contract with JCG titled "Broiler Production Agreement" (hereinafter "Agreement"). Pursuant to the Agreement, JCG and Koch supply the chicks, feed, medicine, and other necessary supplies to the growers (Plaintiffs). The growers care for the chicks for approximately 5 to 6 weeks. Growers own their farms, chicken houses and equipment, and provide labor, materials, and utilities necessary to care for the chicks. The chicken houses and equipment must originally meet JCG's and Koch's strict requirements dealing with design plans and specifications subject to JCG's and Koch's sole approval before a grower is accepted by JCG and Koch. JCG and Koch also dictate the type of veterinary care provided to the birds throughout their lives and the birds' conditions of confinement.

12.    Defendants JCG and Koch operate a poultry processing plant in Collinsville, Alabama and utilize poultry growing arrangements whereby poultry growers care for poultry pursuant to JCG's and Koch's instructions.

13.    Buttram lives with her husband, Jonathan Buttram, on their farm, which she purchased in May of 1997. She began working on her farm full-time beginning

5

on or about 2005.   In 2003, Buttram joined the newly re-organized Alabama Contract Poultry Growers Association (hereinafter ALCPGA) and later became Secretary for ALCPGA. Jonathan Buttram became President of the ALCPGA in June of 2007.

14.   The ALCPGA is an agricultural cooperative association formed pursuant to similar state cooperative statutes and that is comprised of "producers of agricultural products" as defined in Section 2-10-90 of Title 2 of the Alabama Code, and includes an organization whose membership is exclusively limited to agricultural producers and dedicated to promoting the common interest and general welfare of producers of agricultural products.

15.   In late 2005, Koch contacted Buttram about growing poultry for Koch. Koch personnel stated that upon its approval of the poultry facilities, Koch would place birds in the facilities and would enter into a poultry growing arrangement with Buttram for the production of broilers.   They also promised Buttram that as long as she grew a good bird, she would continue to receive placements of baby chicks from Koch.  Buttram was later required to sign a contract with JCG.

16.   During the period that Plaintiff Breaking Free produced broilers for JCG and Koch, new contracts were typically signed in conjunction with payment changes.  Thus, contracts were signed during various months of the year.  During certain years, no new contract was signed.

17.    JCG's and Koch's representations that Buttram would continue to receive chickens was the primary inducement for Buttram to enter into the agreement with JGC and Koch as well as to expend funds to improve her chicken houses. A well-constructed poultry facility has an average life span of approximately 30 years. However with proper maintenance and upgrades a poultry facility can remain in operation between forty (40) and fifty (50) years. Buttram needed ten (10) to fifteen (15) years just to pay off the indebtedness.

18.    JCG and Koch knew that their representations to Buttram that she would continue to receive chickens as long as she grew good birds were false and were intended to induce Buttram to improve her facilities on at least five (5) different occasions at her expense and to continue to contract with JCG and Koch.

19.    JCG and Koch have the contract to provide chicks for Plaintiffs' broiler houses on Buttram's farm.  JCG and Koch breached this contract by refusing to provide (place) chicks on Buttram's farm.  In the fall of 2016, after Defendants became aware of Buttram's husband, Jonathan Buttram's escalating work to educate the public about abuses in the poultry industry and the poultry marketplace, Defendants demanded that Plaintiff meet with them to tell them about Jonathan Buttram's activities.  Buttram declined the meeting.  Buttram told the Defendants that they needed to speak with her husband not her.  In response, and in retaliation, JCG stopped placing chicks on Buttram's farm.

7

20.    In October of 2015, JCG and the Plaintiff agreed that the relationship would continue and executed a new Poultry Production Agreement (PPA) requiring JCG to continue placing chicks on Buttram's farm in accordance with the terms of the PPA.

21.    Before JCG and Koch stopped placing chicks on Plaintiff's farm, Plaintiff had planned to operate the broiler houses on the farm for at least 10 more years.

22.    During the week of November 9, 2016, JCG picked up the flock of broilers on the Buttram farm for processing and, in conformance with the agreement and Buttram began preparing her poultry houses for the next flock. She was told by JCG and Koch personnel that she would be getting chicks place on her farm in a few days.

23.    The Plaintiff reasonably relied on the representations and did not know that the representations were false until JCG and Koch personnel informed her that they would not be placing chicks on her farm and subsequently failed to provide her chicks.

24.    JCG and Koch represented to Buttram that they would not place chicks on her farm until she came to JCG's and Koch's office and told them about her husband's involvement in a restaurant in Ohio and its relationship to the making of a documentary.

25.     During Buttram's conversation with JCG and Koch Broiler Manager, Mike Hale, Buttram's relative performance as a chicken grower, the operation of her farm, including but not limited to bio-security, or the condition of her farm, were never discussed.

26.     The Defendants' later representations in a February 23, 2017, letter to Counsel for Buttram and Breaking Free from Scott W. Pedigo, Counsel for JCG and Koch, regarding a so-called bio-security problem at Buttram's farm were conjured and were false, as well as material and intended to intimidate Buttram into complying with their demands that she must become their informant as it relates to her husband's activities.

27.     Plaintiffs reasonably relied on the JCG's and Koch's representations concerning the longevity of the relationship and the promises from JCG and Koch personnel that they would be placing chicks on her farm to her detriment and did not know that the representations were false until JCG and Koch informed her that they would not be placing chicks on her farm and subsequently failed to provide her chicks.

28.     During the week of November 14, 2016, Buttram continued preparing her poultry houses for the next flock of chicks and by the following week, the houses had already been sprayed for insect and rodent control by JCG and Koch.  Moreover,

Buttram had already been told by JCG and Koch personnel that chicks would be placed on her farm as customary.

29.    On November 23, 2016, JCG and Koch representative, Mike Hales, contacted Buttram by phone and informed her that she needed to come to their facilities at Collinsville, Alabama to meet with a group of JCG representatives. The meeting was to take place on November 28, 2016 at 1:00 PM. Ms. Buttram asked Mr. Hales about the reason for the meeting.  Mr. Hales informed Buttram that she and representatives of Koch and JCG needed to discuss Jonathan Buttram's involvement in a restaurant in Ohio and its relationship to the making of a documentary.

30.    On the morning of November 28, 2016, Buttram called JCG's and Koch's office and questioned why her feed had not been delivered and asked when she would be receiving her next placement of birds.  Mr. Hales again informed Ms. Buttram that she needed to come to his office and meet with him and other "higher ups" concerning her husband.  Buttram asked Mr. Hales if she was being taken out of placement for birds until after this meeting.  She was understandably concerned because JCG and Koch had not delivered feed to her farm.  It is customary that feed is usually delivered approximately a week ahead of receiving birds. She was assured by Mr. Hales that she would begin receiving her birds on Friday, December 2, 2016.

Buttram informed Mr. Hale that she may have to request that the meeting be rescheduled because of a scheduling conflict.

31.    Later that day, Buttram called Mr. Hales again.   She informed Mr. Hales that she would need to reschedule the meeting.  She again inquired why she was being called in to meet with various representatives of JCG and Koch since the meeting involved her husband and not her.  She was then told by Mr. Hales because "you are the one on the contract Ms. Connie".  She informed Mr. Hales that she had not violated any of the terms of her contract and Mr. Hales did not dispute that.  Mr. Hales made it plain to her that Koch and JCG were only concerned with the actions of her husband.

32.    Mr. Hales and other JCG and Koch personnel were aware that Jonathan Buttram does not own, nor operate, Breaking Free, LLC.  He merely helps Connie Buttram with the controllers and does random animal welfare inspections when he is requested to do so by his wife. When Buttram told Mr. Hales "she could not meet today", Mr. Hales informed her that she would not receive birds until the meeting took place.   Buttram was told by Mr. Hales that the "powers above him" had instructed him to not deliver birds to her farm until the meeting concerning Jonathan Buttram took place. Since that time, JCG and Koch have continued to deny the placement of chicks on Buttram's farm.

33.     JCG and Koch have also refused to allow the Buttram's children to grow chickens for them.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF PACKERS AND STOCKYARDS ACT

34.     The Plaintiffs reallege and incorporate by reference in this claim the allegations contained in the preceding and subsequent paragraphs of this complaint. The Defendants used their power over the Plaintiffs and decided to retaliate against Plaintiffs because of her membership in the ALCPGA, as well as that of her husband, Jonathan Buttram, and upon their many activities on behalf of poultry growers in Alabama and especially her husband's involvement in a restaurant in Ohio and its relationship to the making of a documentary. This documentary was eventually produced by Morgan Spurlock and known as Super Size Me 2: Holy Chicken!

35.     The performance of Plaintiffs Buttram and/or Breaking Free as a grower for JCG and Koch was consistently average or above average.  Thus, neither their performance nor the operation of the farm could have been grounds for the JCG's and Koch's refusal to place chickens on the Buttram farm.

36.     The grounds given to Buttram for the refusal to deliver flocks to her farm in accordance with the terms of the PPA was a pretext for the actual reason, which was to punish Buttram and Breaking Free financially, to put them out of the poultry business and to stop or hinder her and her husband's cooperative association

activities.

37.    The conduct described above constitutes unjustly discriminatory and deceptive practices by the defendants and JCG's and Koch's agents and employees, all in violation of the Packers & Stockyards Act, 7 U.S.C. § 192(a).

38.    The conduct described above resulted in Buttram and Breaking Free being subjected to undue and unreasonable prejudice, and disadvantage; all in violation of the Packers & Stockyards Act, 7 U.S.C. § 192(b).

39.    JCG's and Koch's breach of its poultry growing arrangement with Buttram and Breaking Free was without economic justification and thus, were in violation of the Packers and Stockyards Act, 7 U.S.C. § 192(b).

40.    As a direct and proximate result of Defendants' violations, Plaintiffs suffered and incurred substantial damages. These damages include lost business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, and other compensatory damages, in an amount to be determined by a jury and the Court.

## COUNT II
## VIOLATION OF AGRICULTURAL FAIR PRACTICES ACT

41.    The Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

42.    Pursuant to the definitions provided by the AFPA, 7 U.S.C. § 2302, JCG and Koch are "handler(s)", Buttram is a "producer", and the ALCPGA is an

13

"association of producers".

43.     The AFPA, 7 U.S.C. § 2303 makes it unlawful for Koch, JCG or any of its employees or agents to refuse to deal with Buttram and Breaking Free because of Buttram's membership in the ALCPGA, to discriminate against Buttram because of her membership in the ALCPGA, or to coerce or intimidate Buttram to terminate her membership or activities on behalf of the ALCPGA.

44.     The defendants breached JCG's and Koch's relationship with Buttram and Breaking Free and failed to deliver her birds in accordance with the terms of their agreement because of her membership in and her and her husband's activities on behalf of the ALCPGA.

45.     The Defendants' breach of the of the PPA between Breaking Free and JCG and the decision to not to deliver birds in accordance with the terms of the PPA were intended to stop Buttram and her husband's activities exposing the wrongful and unlawful practices of the poultry industry and other efforts on behalf of the ALCPGA and Alabama poultry growers, to stop Buttram's membership and leadership activities with the ALCPGA, and to intimidate other JCG or Koch growers who were members of the ALCPGA or who were considering becoming members of the ALCPGA.

46.     As a direct and proximate result of Defendants' violations, Plaintiffs suffered and incurred substantial damages. These damages include lost business

14

opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, and other compensatory damages, in an amount to be determined by a jury and the Court.

<b><u>COUNT III</u></b><br><b><u>FRAUD</u></b>

47.     The Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

48.     JCG and Koch in October of 2015 represented to Buttram that as long as she grew good birds, she would continue to receive placements of baby chicks from JCG and Koch.

49.     JCG's and Koch's representation that she would continue to receive chickens was the primary inducement for Buttram and Breaking Free to enter into the agreement with JGC and Koch as well as expend funds to improve her chicken houses. A well- constructed poultry facility has an average life span of approximately 30 years. However with proper maintenance and upgrades a poultry facility can remain in operation between forty (40) and fifty (50) years. Buttram and Breaking Free needed ten (10) to fifteen (15) years just to pay off the indebtedness.

50.     JCG and Koch knew that their representations to Buttram and Breaking Free that she would continue to receive chickens as long as she grew good birds were false and were intended to induce Buttram to improve her facilities on at least five (5) different occasions at her expense and to continue to contract with JCG and Koch.

51.     During the week of November 9, 2016, JCG and Koch picked up the flock of broilers on the Buttram farm for processing and, in conformance with the PPA and Buttram began preparing her poultry houses for the next flock. She was told by JCG and Koch personnel that she would be getting chicks placed on her farm in a few days.

52.     Buttram was told by Koch & JCG and that chicks would be placed on her farm on Friday, December 2, 2016 and Monday December 5, 2016.

53.     The Plaintiffs reasonably relied on the representations and did not know that the representations were false until JCG and Koch personnel informed Buttram that they would not be placing chicks on her farm and subsequently failed to provide chicks in December 2016.

54.     JCG and Koch agents, representative or employees represented to Buttram that they would not place chicks on her farm until she came to JCG's and Koch's office and told them about her husband's involvement in a restaurant in Ohio and its relationship to the making of a documentary.   Buttram's or Breaking Free's relative performance as a chicken grower, the operation of the Buttram farm, including but not limited to bio-security, or the condition of her farm was never discussed or mentioned by JCG and Koch Broiler Manager, Mike Hale in any conversation between he and Buttram

55.     The defendants' later representations regarding a so-called bio-security

problem were conjured and were false, were material and intended to intimidate Buttram into complying with their demands that she must become their informant as it relates to her husband's activities.

56.    Plaintiffs reasonably relied on the defendants' representations concerning the longevity of the relationship and the promises from JCG and Koch personnel that they would be placing chicks on her farm to their detriment and did not know that the representations were false until JCG and Koch informed Buttram that they would not be placing chicks on her farm and subsequently failed to provide chicks in November of 2016. To date JCG and Koch continue to refuse to supply chicks to Buttram's farm.

57.    As a direct and proximate result of Defendants' violations, Plaintiffs suffered and incurred substantial damages. These damages include lost business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, and other compensatory damages, in an amount to be determined by a jury and the Court.

58.    As a proximate result of the fraudulent acts of Defendants, the Plaintiffs have suffered damages in excess of $75,000.00.

## COUNT IV
## BREACH OF CONTRACT

59.    The Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

60.    The Defendants deliberately and maliciously refused to honor the requirements of paragraph 4 of its PPA to continue to place birds on the Plaintiff's farm.

61.    As a proximate result of the breach by the defendants, the Plaintiffs have suffered damages in excess of $75,000.

62.    As a direct and proximate result of Defendants' violations, Plaintiffs suffered and incurred substantial damages. These damages include lost business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, and other compensatory damages, in an amount to be determined by a jury and the Court.

## COUNT V
## BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

63.    Plaintiffs re-allege each and every allegation as set forth above, and hereby incorporate same by reference, as if all were set forth fully herein.

64.    Alabama law implies a covenant of good faith and fair dealing in all contracts.

65.    As a result of the actions of Defendants, each of them have violated the implied covenant of good faith and fair dealing contained in the agreements as against Plaintiffs herein, and as a result thereof, Plaintiffs are entitled to their damages incurred.

66.    The foregoing actions were intentional, willful and wanton, and done toward Plaintiffs with sufficient fraud, malice, and oppression to warrant the imposition of punitive damages against Defendants.

## COUNT VI
## NEGLIGENT, WILLFUL AND RECKLESS
## MISREPRESENTATION

67.    The Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

68.    JCG and Koch represented to Buttram that they would not place birds on Plaintiffs' farm because Buttram would not meet with JCG and Koch personnel to discuss her husband's involvement in a restaurant in Ohio and its relationship to the making of a documentary.   JCG and Koch later unlawfully claimed that the reason for not providing chickens to Plaintiff was that her farm had a bio-security problem.

69.    JCG's and Koch's representations regarding Plaintiffs' so-called bio-security problems performance were negligently, willfully and recklessly prepared and presented and were material and intended to show that the Plaintiffs' bio-security problem was a true, correct, and fair analysis.

70.    As a proximate result of the misrepresentations by the defendants, the Plaintiffs have suffered damages in excess of $75,000.

## DAMAGES

71.     As a direct and proximate result of the wrongful acts of the Defendants, Plaintiff Breaking Free, LLC has sustained serious loss and economic injuries. Plaintiff, Connie Buttram, has endured economic loss, physical pain and suffering, mental anguish, anxiety, embarrassment, and public humiliation as a result of the acts of the Defendants and will be caused to endure same in the future as a direct and proximate result thereof.  Further, the conduct was malicious, willful, intentional, and designed to injure Plaintiffs Buttram and Breaking Free and punitive damages should be awarded along with all costs and attorneys' fees.

WHEREFORE, Plaintiffs pray that this Honorable Court:

(a)     assume jurisdiction over this action;

(b)     award Plaintiffs compensatory damages against Defendants in an amount the jury determines will compensate Plaintiffs for their losses and damages suffered,

(c)     award punitive damages against Defendants in an amount that the jury determines is adequate to punish Defendants for their wrongful conduct and to deter others from similar conduct in the future, and/or nominal damages as may be appropriate;

(d)     award Plaintiffs reasonable costs and attorneys' fees associated with this action;

(e)     award Plaintiffs such other equitable and legal relief to which they may be entitled to receive.

WHEREFORE, the Plaintiffs pray for judgment on their complaint, for an award of compensatory and punitive damages in an amount to be determined at trial, for an award of attorney's fees pursuant to 7 U.S.C. § 2305, and for all other relief to which the Plaintiffs may be entitled.

Respectfully submitted this the 9th day of October, 2018.

Rebekah Keith McKinney (ASB-3137-T64J)
Attorney for Plaintiffs
WATSON MCKINNEY LLP
200 Clinton Avenue, Suite 110
Huntsville, Alabama 35801
Tel: (256) 536-7423
Fax: (256) 536-2689
mckinney@watsonmckinney.com


OF COUNSEL:
J. Dudley Butler (Pro Hac Vice Motion Filed Contemporaneously Herewith)
Butler Farm & Ranch Law Group, PLLC
499 A Breakwater Drive
Benton, MS  39039
Tel: (662) 673-0091
jdb@farmandranchlaw.com

## JURY DEMAND

Plaintiffs demand trial by jury.

_____
Rebekah Keith McKinney

**Defendants to be served by certified mail:**

JCG Foods of Alabama, LLC
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL  36104

Koch Foods, Inc.
c/o the Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE  19801

Koch Meat Co., Inc.
c/o Thomas R. Wechter
190 S. Lasalle Street, Suite 3700
Chicago, IL  60603